```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

| | | |
|---|---|---|
| **JEROME BRUCE** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 10-414** |
| | * | |
| **RCS, LLC, ET AL.** | * | **SECTION "B"(3** |

### ORDER

Defendant RCS LLC ("RCS")'s Motion for Summary Judgment (Rec. Doc. No. 22), opposed at Record Document Number 23 with reply at Record Document Number 26, is hereby **DENIED**.

The second defendant in this matter, W&T Offshore Inc. ("W&T"), filed a Motion for Summary Judgment at Rec. Doc. No. 32 on February 22, 2011 which was set for hearing on March 2, 2011. Under the Local Rules, all opposition to that motion was due February 22, 2011 but none was filed. As a result, the Court granted W&T's Motion for Summary Judgment as unopposed on February 25, 2011. (Rec. Doc. NO. 35).

### I. Cause of Action and Facts of Case

This Jones Act negligence claim arises from an alleged ankle injury sustained by Plaintiff in May, 2009 while employed by Defendant RCS during an attempt to board a crewboat to travel offshore. (Rec. Doc. Nos. 1-5; 23). Plaintiff was hired by defendant in December 2007 and allegedly sustained an injury on or about May 5, 2009; at which time Plaintiff was working as a supervisor. (Rec. Doc. No. 22-2 at 1) (citing Plaintiff's Dep.,

Rec. Doc. No. 22-5 at 6).  On the day of the alleged injury, one of RCS's tank cleaning crews was to take a boat offshore to the ROWAN GORILLA IV to perform a job for W&T.[1]  (Rec. Doc. No. 22-2 at 1).

## II. Law and Analysis

A.   Summary Judgment Standard

   1. General Standard

   Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).  A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986).  Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Assocs. of N. Texas,* 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other

---

[1] Plaintiff stated in his deposition that while working for RCS he and the work crews traveled to different jobs by either boat or helicopter, "[p]robably [by] helicopter more."  (Rec. Doc. No. 22-5 at 9).

2

evidence to establish a genuine issue. *Id.* Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

### 2. Summary Judgment Standard Regarding Seaman Status

The Fifth Circuit has noted that "the question of seaman status under the Jones Act is generally a factual issue best left to resolution by a jury." *Hemba v. Freeport McMoran Energy Partners, Ltd.*, 811 F.2d 276, 277 (5th Cir.1987) (citing *Ardoin v. J. Ray McDermott and Co.*, 641 F.2d 277, 280 (5th Cir.1981)). "Nonetheless, summary judgment is appropriate when the "undisputed material facts establish beyond question as a matter of law the lack of seaman status."[2] *Hemba* 811 F.2d at 277 (citing *Reynolds v. Ingalls Shipbuilding Div., Litton Systems, Inc.*, 788 F.2d 264, 267 (5th Cir.1986)). "And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict." *Chandris, Inc. V. Latsis*, 515 U.S. 357, 371 (1995).

### B. Seaman Status Under the Jones Act

The Supreme Court in *Chandris, Inc. V. Latsis*, 515 U.S. 357,

---

[2] *See also* Richard J. Arsenault, *Seaman Status Continues its Voyage Through Unchartered Brown Water Applications Using Barrett V. Chevron*, *U.S.A, Inc. to Set its Course*, 11 Mar. Law. 273, 280 (1986) (discussing Fifth Circuit jurisprudence regarding treatment of the question of seamen status as a question of law or fact).

3

368 (1995) articulated the requirements of seamen status under the Jones Act:

> First . . . an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission. The Jones Act's protections, like the other admiralty protections for seamen, only extend to those maritime employees who do the ship's work. But this threshold requirement is very broad: All who work at sea in the service of a ship are eligible for seaman status.
>
> Second, and most important for our purposes here, a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature. The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea.

Thus, the court addresses the first prong of the *Chandris* test in the context of the instant summary judgment motion.

1. <u>Duties' Contribution to Vessel Function or Mission Accomplishment</u>

The first prong of the *Chandris* test requires that "an employee's duties must contribute to the function of the vessel or to the accomplishment of its mission." *Chandris*, 515 U.S. at 368. In the instant case, Bruce worked as a supervisor to a tank cleaning crew employed by RCS. (Rec. Doc. No. 22-3). Defendant spends little of the instant motion addressing the first prong of the test. Defendant argues that as "Plaintiff's duties aboard

these non-RCS vessels were strictly limited to tank cleaning and related services . . . . plaintiff never contributed to the function of the vessel or the accomplishment of its mission." *Id.* at 8. Defendant points to the fact that Plaintiff was allegedly injured while "in the process of boarding a crewboat" whose only function was to transport the crew to the drilling rig on which they were to work. (Rec. Doc. No. 22-3 at 8). However, Defendant cites no jurisprudence to support the implied proposition that the first prong of the *Chandris* test requires the vessel to whose function or to the accomplishment of whose mission a Plaintiff's duties contributed be the same vessel on which the alleged injury was sustained.

Plaintiff argues that he meets the first prong of the *Latsis* test as his job as a cleaning technician "contributed to the function of the vessels on which he performed his duties; he was not a mere passenger." (Rec. Doc. No. 23 at 2). Plaintiff's opposition cites no case law to support this contention, nor identifies evidence beyond the pleadings to rebut Defendant's argument that Plaintiff must have been assigned to a vessel as a crew member to meet the first prong of the test. *Id.* Considering the evidence with all reasonable inferences in the light most favorable to the nonmoving party, it appears there exists a genuine issue of fact regarding whether Plaintiff's duties as a tank cleaning technician contributed to the function of the

5

vessel(s) on which they were performed or to the accomplishment of their mission.

    2.   <u>Substantial Connection to Vessel or Fleet of Vessels</u>

The second prong of the test requires that "a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature."  *Chandris*, 515 U.S. at 368.  Clarifying the "duration" element of the above enunciated test, the Court stated that "a worker who spends less than about 30 percent of his time in service of a vessel in navigation should not qualify as a seaman under the Jones Act."[3]  *Id*. at 371.

The Court stated in *Chandris*, 515 U.S. at 366, that "[s]oon after *Robison*, the Fifth Circuit modified the test to allow seaman status for those workers who had the requisite connection with an 'identifiable fleet' of vessels, a finite group of vessels under common ownership or control."  (citing *Braniff v. Jackson Avenue-Gretna Ferry, Inc.*, 280 F.3d 523, 528 (5th Cir. 1960)).  In the subsequent case of *Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 556-57 (5th Cir.1997), the Court stated that *Chandris* described the "group of vessels concept" as "a rule allowing seaman status for those workers who had the requisite connection with an

---

[3]The Court added "This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, '[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it.'" *Id*. (quoting *McDermott Intern., Inc. v. Wilander*, 498 U.S. 337, 356 (1991)).

identifiable fleet of vessels, a finite group of vessels under common ownership or control." *Roberts v. Cardinal Services, Inc.*, 266 F.3d 368, 375-76 (5th Cir.2001) (quoting *Papai*, 520 U.S. at 556-57) (internal quotations omitted).

    The Fifth Circuit in *Roberts* also iterated that the thirty percent guideline enunciated by the *Chandris* Court is applicable to the "fleet requirement" of that test.[4]  *Roberts*, 266 F.3d at 377.  The *Roberts* court continued stating that "application of the 30 percent test is the very means by which a substantial temporal connection is determined, regardless whether a single vessel or a group of vessels is at issue. And, when a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control."  *Id*. at 376-77.  (citing *Hufnagel v. Omega Service Industries, Inc.*, 182 F.3d 340, 348 (5th Cir.1999)).  In the passage of *Hufnagel* cited in *Roberts*, the Fifth Circuit stated "[w]e reject the notion that fleet of vessels in this context means any group of vessels an employee happens to work aboard.'... [A] group of vessels will only qualify where it is a specific,

---

[4]The *Chandris* Court later noted that "[s]ince *Barrett*, the Fifth Circuit consistently has analyzed the problem in terms of the percentage of work performed on vessels for the employer in question-and has declined to find seaman status where the employee spent less than 30 percent of his time aboard ship." *Id*. at 367.

identifiable fleet or a finite group of vessels, subject to common ownership or control."[5] *Hufnagel*, 182 F.3d at 358 (quoting *Barrett v. Chevron, U.S.A., Inc.*, 781 F.2d 1067, 1074 (5th Cir.1986)).

Here, the court cannot reach an analysis of the substance of any temporal connection between Plaintiff and a vessel or a fleet of vessels as neither party has provided records of Plaintiff's entire work history with Defendant from December, 2007 to August, 2009. As such, the court cannot determine whether Plaintiff satisfies the "common ownership or control" requirement of the second prong of the test. Plaintiff worked on numerous vessels during his employment with Defendant; the undisputed statement of RCS Rig Manager Ryan Hanagriff states that Plaintiff "was assigned as a supervisor to a tank cleaning crew that would perform various jobs involving work on drill ships, semi-submersible rigs, and/or jack-up drilling rigs that were owned and operated by third parties, which jobs lasted for a finite period of time, at the conclusion of which the RCS crew would depart the job site and return to shore." (Rec. Doc. No. 22-4 at 2).

Defendant provides Plaintiff's time sheets only for the period between May 2009 and August 2009 at Rec. Doc. No. 22-7. Plaintiff

---

[5] *See also Jenkins v. Aries Marine Corp.*, 554 F.Supp. 2d 635, 640 (E.D. La., 2008) discussing *Roberts*, 266 F.3d 368 (5th Cir.2001) and stating that "[i]n other words, the plaintiff in Roberts erroneously argued that the Cardinal vessels and various other third-party vessels (which were owned and controlled by different entities) combined to constitute a 'fleet.' The Fifth Circuit rejected that argument."

notes in his opposition that "defendant has not provided Mr. Bruce's work history for the entire time he worked for RCS, beginning in December 2007." (Rec. Doc. No. 23 at 5).

Plaintiff agues that, using the "brief snapshot" of Plaintiff's work history with Defendant, Plaintiff "spent nearly 30% of his time as outlined in the snapshot provided by RCS aboard a Mariner Energy rig." (Rec. Doc. No. 23 at 5). Thus Plaintiff submits that his "work history meets the spirit of the law [and] . . . . [i]t should be left to the finder of fact to determine if [Plaintiff] meets the requirements for seaman status." *Id*. In that same opposition to the instant motion, Plaintiff states that, under relevant precedent, "the court is to consider the overall employment of the plaintiff by the defendant and, as a guideline, if that employment includes at least 30% of his time spent *working as a seaman on vessels under common ownership or control*, then the plaintiff qualifies" as Jones Act seaman. (Rec. Doc. No. 23 at 6) (emphasis added). In summary, whatever temporal connection here existed between Plaintiff and a vessel or a fleet of vessels, it cannot be determined from the record whether "the 30 percent threshold for determining substantial temporal connection" is applicable. *Roberts*, 266 F.3d at 375.

Accordingly, Defendant's Motion for Summary Judgment (Rec. Doc. No. 22) is **DENIED.**

New Orleans, Louisiana, this 1ST day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE